United States District Court
Southern District of Texas
**ENTERED**
July 19, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,    Plaintiff, | § § § | |
| v. | § § | CRIMINAL NO. 6:12-64 |
| KERSTIN PREIS JONES,    Defendant. | § § § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court are Defendant Kerstin Preis Jones' Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (D.E. 87), Request for Compassionate Release (D.E. 94), and Supplemental/Addendum – Emergency – Expedited Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (D.E. 103), to which the Government has responded (D.E. 98, 105).

**I. BACKGROUND**

In 2012, Defendant met with an undercover agent with the Texas Department of Public Safety and solicited him to murder a woman who was causing problems in Defendant's marriage. She provided the agent with a firearm in order to execute the murder-for-hire plot and informed him that the firearm was stolen and its serial number was obliterated. She also provided the agent $2,000 and 1,480 prescription pills as payment. As a result, Defendant was arrested by state law enforcement for solicitation of capital murder. Subsequent investigation revealed that she owned additional firearms and ammunition and that she purchased firearms from a local sporting goods store in 2007 and 2011. During those transactions, Defendant completed ATF Form 4473, in which she indicated that she was a US citizen and was not illegally present in the country, despite being a German citizen whose visitor's visa expired in 1994. She has not obtained legal status within the US since then and is considered a deportable alien.

Defendant was charged in a five-count indictment in federal court. Count One alleged that Defendant, being an alien illegally present in the United States, did knowingly possess five firearms and ammunition; Counts Two and Three alleged that she knowingly made false statements on ATF Form 4473; Count Four alleged that she possessed a stolen firearm; and Count Five alleged that she possessed a firearm whose serial number had been removed, obliterated, or altered. She pled guilty to Counts Four and Five and was sentenced to 120 months' imprisonment, to be served concurrently with her 10-year state sentence for criminal solicitation of capital murder and unlawful delivery of a controlled substance.

Defendant has a projected release date, after good time credit, of April 15, 2023. She now moves the Court to reduce her sentence to time served because: (1) her underlying medical conditions make her particularly vulnerable to severe illness or death should she contract COVID-19 in prison; (2) she has been diagnosed with a terminal illness, is confined to a wheelchair 24 hours a day, and has serious health issues that substantially diminish her ability to provide self-care in prison; (3) "other reasons" under *Rehaif v. United States*, 139 S.Ct. 2192 (2019);  (4) she has shown tremendous efforts at rehabilitation; and (5) the Eighth Amendment requires her release.

Defendant filed an administrative request for compassionate release with the Warden at FCI Aliceville on November 30, 2020, but her request was denied. The Government opposes her motion because she is fully vaccinated against COVID-19, there is no medical evidence to support most ailments about which she complains, and she poses a danger to the community if released.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>     (1) in any case—

2

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*
> > *(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

The Fifth Circuit previously considered U.S.S.G. § 1B1.13 an applicable policy statement when a prisoner, rather than the Bureau of Prisons (BOP), moved for relief under § 3582(c)(1)(A)(i). *United States v. Coats*, 853 F. App'x 941, 942 (5th Cir. 2021). In *Shkambi*, however, the Fifth Circuit "joined [its] sister circuits in holding that § 1B1.13 does not actually apply to § 3582(c)(1)(A)(i) motions brought by the inmate." *Id.* (citing *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021) ("Neither the [U.S. Sentencing Commission's compassionate-release] policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582.")). Although "not dispositive," the commentary to U.S.S.G. § 1B1.13 nonetheless "informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, 833 Fed. App'x 556, 556 (5th Cir. 2020)).[1]

---

1. **(A) Medical Condition of the Defendant. –**
   > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
   > (ii) The defendant is—
   > > (I) suffering from a serious physical or medical condition,
   > > (II) suffering from a serious functional or cognitive impairment, or
   > > (III) experiencing deteriorating physical or mental health because of the aging process,

Even if "extraordinary and compelling reasons" for early release exist, the Sentencing Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

"If the district court makes those two findings"—both that extraordinary and compelling reasons warrant a sentence reduction *and* that a reduction is consistent with the applicable Guidelines' policy statements—"then the court 'may' reduce the defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Ward v. United States*, 11 F.4th 354, 359–60 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The

---

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant. –**
  The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;

**(C) Family Circumstances. –**
  (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons. –**
  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

applicable § 3553(a) factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the need to avoid unwarranted sentencing disparities among similarly-situated defendants; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7). "The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction." *Ward*, 11 F.4th at 360.

"[T]he burden falls on the defendant to convince the district judge to exercise discretion to grant the motion for compassionate release . . . ." *Id.* at 361 (internal quotations and alterations omitted); *see also United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) ("In general, the defendant has the burden to show circumstances meeting the test for compassionate release.").

With respect to motions for compassionate release based on COVID-19:

> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

> To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. . . . But that is certainly not a

5

> unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.
>
> The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release.

*Thompson*, 984 F.3d at 434–35 (collecting cases) (footnotes and citations omitted).

### III. ANALYSIS

#### A. Extraordinary and Compelling Reasons

##### 1. COVID-19 Concerns

Defendant moves the Court for compassionate release because her underlying medical conditions (asthma, hypertension, hypothyroidism, seizures, stroke, cardiac arrhythmias, lupus, excessive and irregular menstruation, post-infective reactive arthropathies, adverse food reactions, abdominal hernia, chronic migraines, neuropathy, degenerative disc disease, lower lumbar neuro fibrosis, nerve damage, carpal tunnel, PTSD, severe anxiety, and clinical obesity) make her particularly vulnerable to severe illness or death should she contract COVID-19 in prison.

Defendant's medical records confirm that she suffers from asthma and hypertension. According to the Centers for Disease Control and Prevention's (CDC) most recent COVID-19 risk factor list, asthma and "possibly" hypertension "can make you more likely to get very sick from COVID-19." *See People with Certain Medical Conditions*, CDC (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The Government acknowledges that "[a]n inmate who has not been offered a vaccine, who presents a condition on that list, presents an 'extraordinary and compelling reason' allowing consideration of compassionate release." D.E. 98, p. 14. Defendant, however, received his first dose of the Pfizer-BioNTech COVID-19 vaccine on March 11, 2021, and the second dose on April 17, 2021. She also received a booster of the Moderna COVID-19 vaccine on October 21,

2021. While the vaccine is not 100% effective at preventing infection, it substantially reduces the risk of serious illness or death from COVID-19, even in patients with high-risk medical conditions.

"Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit." *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021). Courts in this district have repeatedly denied compassionate release to inmates who have been vaccinated against COVID-19, "finding that 'vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection.'" *United States v. Rodriguez*, 2021 WL 2635381, at *4 (S.D. Tex. June 25, 2021) (quoting *United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to inmate with underlying health conditions who had received first vaccine dose), and citing *United States v. Schad*, 2021 WL 1845548, at *3 (S.D. Tex. May 5, 2021) (denying compassionate release to 32-year-old inmate with aortic valve transplant and history of cerebrovascular disease who received both doses of the vaccine); *United States v. Fisch*, 2021 WL 1537274, at *1 (S.D. Tex. Apr. 19, 2021) (denying compassionate release to high-risk inmate who was offered and refused the vaccine); *United States v. Wedding*, 2:19-CR-1693 (S.D. Tex. Apr. 8, 2021) (denying compassionate release to inmate who developed asymptomatic COVID-19 infection three weeks after receiving second vaccine)). Because Defendant is "at little-to-no risk of severe COVID-19 [] after receiving his second [vaccine] dose, there are no 'extraordinary and compelling reasons' justifying a compassionate release in this case." *See United States v. Groom*, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021).[2]

---

2. Decisions across the country overwhelmingly agree that the risk posed by COVID-19 to a vaccinated inmate is not an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Burks*, 2021 WL 1394857, at *3-4 (W.D.N.C. Apr. 13, 2021); *United States v. Gomez-Vega*, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021); *United States v. Burks*, 2021 WL 1291935, at *2 (D. Minn. Apr. 7, 2021); *United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021); *United States v. Miller*, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021); 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021); *United States v. Decano*, 2021 WL 1095979, at *6 (D. Haw. Mar. 22, 2021); *United States v. Williams*, 2021 WL 1087692, at *3 (D. Minn. Mar. 22, 2021); *United States v. Gabbard*, 2021 WL 1037724, at *3 (E.D. Mich. Mar. 18, 2021); *United States v. Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17,

### 2. Inability to Provide Self-Care

Defendant suffered a seizure in 2017 with stroke-like symptoms. She states that she been confined to a wheelchair "24 hours a day" in a handicap cell ever since and is unable to provide self-care for several of her chronic medical conditions as a result. She also claims to have been diagnosed with an unidentified terminal illness.

Nearly all of Defendant's medical complaints are subjective and have not been diagnosed by a physician. Moreover, her medical records reflect she has a history of both not taking and overtaking prescription medications. She has been repeatedly counseled on the potential risks of not taking her blood pressure and seizure medications, including stroke, heart attack, and death. Finally, the AUSA recently spoke to BOP physician Dr. Xinyu Li, who stated that Defendant's medical condition "looks good" and does not require the use of a wheelchair. She does not suffer atrophy—the loss of muscle mass to her extremities—as one would expect with the requirement to use a wheelchair 24 hours a day. Due to her medical status, Dr. Li suspects that Defendant exercises at night when observation of her activities is limited.

On this record, the Court finds Defendant has not shown her medical condition presents an extraordinary and compelling reason for compassionate release.

### 3. *Rehaif*

Defendant's initial motion for compassionate release lists "1B1.13 App. Note 1(d) 'Other reasons' under 'Rehaif' SCOTUS for 18 U.S.C. 922(D) 922(K) – 924(a)(2)" as one basis for her

---

2021); *United States v. Stewart*, 2021 WL 1011041, at *1 (D. Haw. Mar. 16, 2021); *United States v. Godoy-Machuca*, 2021 WL 961780, at *2 (D. Ariz. Mar. 15, 2021); *United States v. Williams*, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021); *United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021); *United States v. Cardoza*, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021); *United States v. Poupart*, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021); *United States v. Johnson*, 2021 WL 863754, at *2 (W.D. Ky. Mar. 8, 2021); *United States v. Shepard*, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021); *United States v. Lipscomb*, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021); *United States v. Cortez*, 2021 WL 689923 (D. Ariz. Feb. 23, 2021); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021); *United States v. Ballenger*, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021).

request. D.E. 87, p. 5. To the extent Defendant seeks to reduce her sentence under *Rehaif v. United States*, 139 S.Ct. 2191 (2019), relief is available, if at all, in a motion to pursuant to 28 U.S.C. § 2255.

### 4. Post-Sentencing Rehabilitation

Defendant emphasizes that she has not had a single disciplinary infraction in prison. She states that she has become "a trusted and respected inmate and mentor to younger defendants who pass through prison." D.E. 103, p. 11. Despite being in a wheelchair, she has completed several educational programs and devotes her time to making prison a better place for others. Defendant's efforts are commendable; however, while the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone. *See* U.S.S.G. § 1B1.10, app. n.1(B)(iii).

### 5. Eighth Amendment

Citing prison lockdown conditions and the BOP's inability to protect her from COVID-19, Defendant claims the Eighth Amendment requires her release. To the extent she wishes to pursue her Eighth Amendment claims, she may file a separate civil action. However, the Court does not have the statutory authority to reduce Defendant's sentence based on the alleged conditions of confinement.

### B. Sentencing Guidelines Policy Statements and 18 U.S.C. § 3553(a) Factors

Defendant stresses that she has no history of violence, and "although she was convicted of a weapons charge, it was for only possessing a stolen firearm and a firearm with removed serial number." D.E. 94, p. 11. She does concede, however, that the weapon was possessed in connection to solicitation for capital murder.

Based on the nature and circumstances of the offense of conviction, the weight of the evidence, and the danger to the community that would be posed by Defendant's early release, the Court finds that a sentence reduction would not be consistent with the applicable Sentencing Guidelines' policy statements. *See* 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(2). The Court further finds that a sentence reduction would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2).

## IV. CONCLUSION

For the reasons set forth above, the Court finds that extraordinary and compelling reasons do not warrant a sentence reduction and that a reduction would be inconsistent with § 3553(a) and the applicable policy statements issued by the Sentencing Commission. Accordingly, Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (D.E. 87), Request for Compassionate Release (D.E. 94), and Supplemental/Addendum – Emergency – Expedited Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (D.E. 103) are **DENIED**.

It is so **ORDERED** this 18th day of July, 2022.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE